UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENEE BLACKWELL,<br><br>Plaintiff,<br><br>v.<br><br>DOLORES HELB, DEBRA BOEHME and BARBARA PARNES, et al.<br><br>Defendants. | Civil Action No. 09-3004 (GEB)<br><br>**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION: PLAINTIFF RENEE BLACKWELL PLACES HER DAUGHTER DENINE HOWELL FOR ADOPTION**

1. Plaintiff Renee Blackwell ("Plaintiff") placed her daughter, Denine Howell ("Ms. Howell"), for adoption over thirty years ago because Plaintiff "could not afford to care for her in a manner in which she should have been cared for." See March 11, 2010 Deposition of Renee Blackwell, Declaration of Karen L. Jordan ("Jordan Decl."), Exhibit A, p. 25; see also Plaintiff's First Amended Complaint, Jordan Decl., Exhibit B, ¶ 11.

2. The adoption was handled by the State of New Jersey Department of Children and Families, Division of Youth and Family Services, which at the time of Ms.

Howell's adoption was called the Department of Institutions and Agencies, Bureau of Children's Services. See Jordan Decl., Exhibit A, p. 27; see also Defendants' Initial Disclosures, Jordan Decl., Exhibit C, DCF16.

3. As an adult adoptee, Ms. Howell decided to search for her birth family. See July 15, 2009 Voluntary Statement of Denine Howell, Jordan Decl., Exhibit C, DCF60-DCF67.

4. Plaintiff, however, wanted no contact with Ms. Howell. See Jordan Decl., Exhibit B, ¶ 14.

5. According to Plaintiff, Ms. Howell was the product of a rape. See Jordan Decl., Exhibit B, ¶ 12; Exhibit A, pp. 23-24.

**MS. HOWELL CONTACTS**
**THE NEW JERSEY ADOPTION REGISTRY ABOUT HER BIRTH FAMILY**

6. To help her search, Ms. Howell contacted the New Jersey Adoption Registry (the "Registry") on December 17, 2007. See Jordan Decl., Exhibit C, DCF2-DCF3, DCF14; see also April 26, 2010 Deposition of Dolores Helb, Jordan Decl., Exhibit D, p. 8; April 30, 2010 Deposition of Barbara Parnes, Jordan Decl., Exhibit E, p. 6; and April 30, 2010 Deposition of Debra Boehme, Jordan Decl., Exhibit F, pp. 9-13

7. The Registry is a branch of the Division of Youth

and Family Services that searches for adult adoptees' birth families. See Jordan Decl., Exhibit C, DCF34-DCF48 (Field Operations Casework Policy and Procedure Manual, the "Manual."); Exhibit D, p. 8.

8. The Registry provides non-identifying background information to adult adoptees. See Jordan Decl., Exhibit F, pp. 9-10; see also Jordan Decl., Exhibit C, DCF38-DCF40 (the Manual).

9. Non-identifying information is "all available information on the characteristics and background of the adoptee and the adoptee's birth family except information identifying the adoptees' birth family and information that enables them to determine the location of the birth family." See Jordan Decl., Exhibit C, DCF38 (the Manual).

10. Identifying information, on the other hand, is "information identifying the adoptees' birth family and information that enables them to determine the location of the birth family" and includes "a name and address…also a city, anything that…could lead to someone's identity." See Jordan Decl., Exhibit C, DCF38 (the Manual); Exhibit D, p. 24.

11. The Manual, which governs the services the Registry can provide to adult adoptees and their birth families, permits the release of non-identifying

information:

> Adoptive parents and adult adoptees are entitled to receive in writing all available information on the characteristics and background of the adoptee and the adoptee's birth family…

See Jordan Decl., Exhibit C, DCF38, DCF40 (the Manual).

12. Identifying information is generally not released to adult adoptees, but can be properly disclosed if the birth family, including birth parents and siblings, permit the release of identifying data to the adult adoptee. See Jordan Decl., Exhibit C, DCF39, DCF44 (the Manual).

13. Ms. Howell spoke to Defendant Barbara Parnes, a Registry employee, on December 17, 2007 and requested a search for her birth family, including her biological mother, Plaintiff Renee Blackwell. See Jordan Decl., Exhibit C, DCF2-DCF3, DCF14; Exhibit D, p. 8; Exhibit E, p. 6.

**THE REGISTRY'S SEARCH FOR MS. HOWELL'S BIRTH FAMILY**

14. After speaking with Ms. Howell, on December 17, 2007, Defendant Parnes sent her an adoption registry application, which would allow the Registry to search for Ms. Howell's biological family members. See Jordan Decl., Exhibit C, DCF23; Exhibit E, pp. 6-8.

15. Ms. Howell returned the completed application to Defendant Parnes on January 26, 2008. See Jordan Decl.,

Exhibit C, DCF14, DCF60-66.

16. Defendant Parnes filed Ms. Howell's application, which would be processed in the order it was received. See Jordan Decl., Exhibit E, p. 8.

17. Defendant Dolores Helb, who also worked in the Registry, was assigned to conduct the actual search for Ms. Howell's birth family. See Jordan Decl., Exhibit D, pp. 16-17.

18. Defendant Helb started the search by sending a letter to Plaintiff on August 11, 2008. See Jordan Decl., Exhibit B, pp. 9-11, 29, 32; Exhibit C, DCF9; Exhibit D, pp. 16-17.

19. The August 11, 2008 letter stated that Defendant Helb was searching for "a Renee M. Blackwell" "on an important family matter," specifically that an adult adoptee was seeking "information about, and possible contact with" her birth family. See Jordan Decl., Exhibit C, DCF9.

20. The August 11, 2008 letter asked Plaintiff to review "the enclosed form which can be used to indicate whether or not you are the person I am seeking, and/or if you are interested in pursuing this matter." See Jordan Decl., Exhibit C, DCF9.

21. The form was a "release" that gave Plaintiff the

options of disclosing or withholding her identity from Ms. Howell. See Jordan Decl., Exhibit D, pp. 17-18; Exhibit F, pp. 14-15.

22. The August 11, 2008 letter did not disclose Ms. Howell's identity, nor did it identify Plaintiff as her birth mother. See Jordan Decl., Exhibit C, DCF9; Exhibit D, p. 17.

23. Plaintiff did not return the form or otherwise respond to the August 11, 2008 letter, but nevertheless neither wanted contact with Ms. Howell nor wanted her identify revealed to her. See Jordan Decl., Exhibit A, pp. 15, 29; Exhibit B, ¶¶ 14, 17; Exhibit D, p. 18.

24. Having heard nothing from Plaintiff, Defendant Helb told Ms. Howell that she "could not share any information with her" about her birth mother, but could search for biological siblings. See Jordan Decl., Exhibit D, pp. 19-20.

25. Defendant Helb found that Ms. Howell had a brother, who had recently been released from prison, and a sister, Jenine Blackwell ("Ms. Blackwell"), who lived in southern New Jersey. See Jordan Decl., Exhibit D, pp. 21-22.

26. Ms. Howell had learned earlier, through the Registry's search for non-identifying information, that she

had a biological brother and sister. See Jordan Decl., Exhibit D, pp. 19-20.

27. Defendant Helb found an address for the sister, Ms. Blackwell, and sent her a letter (much like the letter she sent to Plaintiff) on December 1, 2008 stating that she was "searching for the family of Renee Blackwell at the request of an adult adoptee in search of her birth family." See Jordan Decl., Exhibit C, DCF 8. This letter was not copied to Ms. Howell. Id.

28. The December 1, 2008 letter to Jenine Blackwell also stated that she "may be related" to the adult adoptee and asked her to "review the enclosed form," which was the same release Plaintiff received with her August 11, 2008 letter. See Jordan Decl., Exhibit C, DCF 8.

29. Ms. Blackwell completed the form, returned it to the Registry on December 2, 2008, and authorized the Registry to release her phone number to Ms. Howell. See Jordan Decl., Exhibit C, DCF2, DCF4; Exhibit D, pp. 22-23; Exhibit E, p. 8; see also March 11, 2010 Deposition of Jenine Blackwell, Jordan Decl., Exhibit G, pp. 12-13, 28.

30. Defendant Helb received Ms. Blackwell's completed form on December 9, 2008 and told Ms. Howell the "news" that she could contact her birth sister, Ms. Blackwell, that day. See Jordan Decl., Exhibit C, DCF2; Exhibit D,

pp. 22-23.

**CONTACT BETWEEN MS. HOWELL AND HER SISTER, JENINE BLACKWELL**

31. By December 16, 2008, Ms. Blackwell had not heard from her sister, Ms. Howell, so she called the Registry that day and spoke to Defendant Parnes about the situation. See Jordan Decl., Exhibit C, DCF2; Exhibit D, p. 23; Exhibit E, pp. 7, 9-11.

32. On December 16th, Defendant Parnes called Ms. Howell who explained that Ms. Blackwell's phone number was "out of order." See Jordan Decl., Exhibit D, p. 23; see also Exhibit C, DCF2; Exhibit E, pp. 7, 9-11.

33. Defendant Parnes then called Ms. Blackwell (also on the 16th) and suggested she call Ms. Howell directly. See Jordan Decl., Exhibit C, DCF2; Exhibit E, pp. 7, 9-11.

34. The sisters spoke for the first time later that day. See Jordan Decl., Exhibit C, DCF2.

35. After this string of phone calls among Defendant Parnes, Ms. Howell and Ms. Blackwell, Plaintiff called Defendant Parnes, also on December 16, 2008, claiming that "someone (Denine [Howell]) showed up at her doorstep on Saturday." See Jordan Decl., Exhibit C, DCF2; see also Jordan Decl., Exhibit A, pp. 11-13; Exhibit D, pp. 23-24; Exhibit E, p. 13.

36. Plaintiff was "irate" and demanded to know how

"this person" got her address. See Jordan Decl., Exhibit C, DCF2; Exhibit E, pp. 13-14.

37. Despite Defendant Parnes' assurances that the Registry "does not give out identifying information without the consent of the person concerned," Plaintiff told her the Division "had no right to contact her daughter [Ms. Blackwell]" and "had no right to invade her privacy." See Jordan Decl., Exhibit C, DCF2.

38. Plaintiff said her "failure to respond" to the August 11, 2008 letter from the Registry "was her way of saying that she did not want" to be in contact with her adult daughter, Ms. Howell. See Jordan Decl., Exhibit C, DCF2; see also, Jordan Decl., Exhibit A, p. 15 ("I asked [Defendant] Parnes - I said, you didn't have any type of authorization from me, no permission whatsoever....")

39. Plaintiff "vowed to get a lawyer." See Jordan Decl., Exhibit C, DCF2.

40. Plaintiff sued several Defendants, including Defendant Parnes and Defendant Debra Boehme, claiming they improperly disclosed to Ms. Howell, Plaintiff's identifying information and the identifying information of her adult daughter, Jenine Blackwell, "so to allow the adoptee daughter to ascertain Plaintiff's constitutionally and statutorily protected identity." See Jordan Decl., Exhibit

B.

41. Defendant Boehme supervised the Registry when Ms. Howell sought its help in searching for her birth family; she had no substantive conversations with Plaintiff, Ms. Howell or Ms. Blackwell at any point during Ms. Howell's family search and she did no work in searching for Ms. Howell's birth family. See Jordan Decl., Exhibit F, p. 15.

**THE REGISTRY'S NON-DISCLOSURE**
**OF PLAINTIFF'S IDENTIFYNG INFORMATION**

42. Defendant Helb testified generally that "without [Plaintiff's] permission" "I was not authorized" "to give out her identity." See Jordan Decl., Exhibit D, pp. 19, 25 ("We cannot give out identifying information without someone's permission.")

43. Defendant Helb told Ms. Howell that she "had not heard from the birth mother" and that she "could not share any information with her." See Jordan Decl., Exhibit D, p. 19.

44. When asked in her deposition "[d]id you give any information regarding the biological mother," Defendant Helb said again "[w]e can't give identifying information." See Jordan Decl., Exhibit D, p. 24.

45. Regarding the disclosure of Jenine Blackwell's information to Ms. Howell, Defendant Helb testified that

the Manual permits the Registry to search for biological siblings, to share their contact information if authorized to do so, and that the Registry disclosed Jenine Blackwell's phone number to Ms. Howell with Ms. Blackwell's permission. See Exhibit D, pp. 21-22, 26, 28, 41-44.

46. Defendant Parnes testified "we do not give out identifying information; would not have given out her address." See Jordan Decl., Exhibit E, p. 14.

47. When asked "did you…give any information out concerning Renee Blackwell to Denine," Defendant Parnes said "No." See Jordan Decl., Exhibit E, p. 14.

48. Defendant Boehme also explained that identifying information of birth parents is "closed" and cannot be released without the parent's permission. See Jordan Decl., Exhibit F, pp. 16-18.

49. Defendant Boehme knew Plaintiff "didn't want her identity released" and said that Plaintiff's "identity was not released." See Jordan Decl., Exhibit F, p. 33.

50. Ms. Howell, after learning of this lawsuit, contacted the New Jersey Attorney General's Office to "show that the State…did not reveal anything to me regarding [Renee Blackwell's] identity." See Jordan Decl., Exhibit C, DCF61.

51. Ms. Howell discovered Plaintiff's name and

contact information on her own by doing independent computer searches using the name of her sister, Jenine Blackwell. See Jordan Decl., Exhibit C, DCF63.

52. When asked if she did "anything else…to…locate" her sister or birth mother, Ms. Howell said:

> I took her [Jenine Blackwell's] name and I went on line and…I did a search. I just started cross-referencing information, and that's how I figured out [Renee] Blackwell was my biological mom.
>
> …Do you know what type of searches you did?
>
> Zaba search dot com…they go through a system called Intelius….
>
> …the searches you did, did you do them just on your biological mother, Renee Blackwell or did you also do them on your sister?
>
> No! I didn't know my mom's name, so I did it on my sister, I had know [sic] idea who my mom was, so I did the search on my sister…relatives come up…so you…do a little bit of playing around…to try to put the information together, so once I kinda put two and two together I then did a search on Renee to see if it cross referenced Jenine.

See Jordan Decl., Exhibit C, DCF63-DCF64.

53. When asked if the Registry released any information to her, Ms. Howell said

> "[n]o, no, no. DYFS just gave me Jenine's name because Jenine responded and said she wanted to be contacted. I being the person I am, I did the rest all by myself. Ms. Parnes did nothing at all.

See Jordan Decl., Exhibit C, DCF65.

54. Plaintiff assumes that "the State went on and disclosed my information anyhow" "regardless of whether or not I returned the [August 11, 2008] letter." See Jordan Decl., Exhibit A, pp. 16-17, 26-28.

55. Plaintiff has no other information about what the State told Ms. Blackwell about her birth mother or the circumstances of her birth. See Jordan Decl., Exhibit A, pp. 16-17, 26-28.

56. When asked if she had any information that Defendant Helb gave Ms. Howell her address, Plaintiff said "[n]o." See Jordan Decl., Exhibit A, p. 34.

57. When asked if she knew how Ms. Howell obtained her full name, Plaintiff said "[n]o." See Jordan Decl., Exhibit A, p. 36.

58. When asked if she had any other information about how Ms. Howell found her, Plaintiff said "[n]o." See Jordan Decl., Exhibit A, p. 37.

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY

By: Karen L. Jordan /s/
Karen L. Jordan
Deputy Attorney General

Dated: July 9, 2010