UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENEE BLACKWELL, | : |
| Plaintiff, | : Civil Action No. 09-3004 (GEB) |
| v. | : |
| DOLORES HELB, DEBRA BOEHME, | : |
| BARBARA PARNES, et al. | : |
| Defendants. | : |

BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 116
Trenton, New Jersey 08625
(609) 777-4031
Attorney for Defendants,
Barbara Parnes and Debra Boehme

Karen L. Jordan
Deputy Attorney General
On the Brief

# TABLE OF CONTENTS

Table of Contents   .   .   .   .   .   .   .   . i

Table of Authorities   .   .   .   .   .   .   .ii

I.   Introduction.   .   .   .   .   .   .   .   . 1

II.   Statement of Facts.   .   .   .   .   .   . 2

    A.   Plaintiff Gives Up Her Daughter,
        Denine Howell, for Adoption.   .   .   .   . 2

    B.   Ms. Howell Contacts the New Jersey
        Adoption Registry About Her Birth Family.   . 3

    C.   The Registry's Search for Ms. Howell's Birth
        Family.   .   .   .   .   .   .   .   . 3

    D.   Contact Between Ms. Howell
        and Her Sister, Jenine Blackwell.   .   .   . 6

    E.   The Registry's Non-Disclosure
        of Plaintiff's Identifying Information.   .   . 7

III. Argument.   .   .   .   .   .   .   .   .10

    A.   Summary Judgemnt Standard
        Under Fed. R. Civ. P. 56(c).   .   .   .   .10

    B.   Plaintiff's Complaint Should Be Dismissed:
        There Are No Facts To Support Plaintiff's Claims.12

    C.   Plaintiff's Complaint Should Be Dismissed:
        Defendants' Enjoy Qualified Immunity.   .   .17

        1.   Defendants' Alleged Disclosure of
            Plaintiff's Identity to her Biological
            Daughter Did Not Violate Plaintiff's Right
            to Privacy Under the Federal Constitution.   .19

        2.   Plaintiff's Alleged Right to Conceal Her
            Identity as a Birth Mother Was Not Clearly
            Established.   .   .   .   .   .   .   .30

IV.  Conclusion.   .   .   .   .   .   .   .   .36

## TABLE OF AUTHORITIES

### CASES

Albright v. Oliver, 510 U.S. 266 (1994).    .    .    .    .29

Alexander v. Peffer, 993 F.2d 1348 (8th Cir. 1993).    .    .23

Anderson v. Creighton, 483 U.S. 635 (1987).    .    .    .    .31

Anderson v. Liberty Lobby, 477 U.S. 242 (1986).    .    .  10,11

Baker v. McCollan, 435 U.S. 137 (1979).    .    .    .    .    .29

Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics, 403 U.S. 388 (1971).    .    .    .    .    .32

Brown v. Borough of Mahaffey, 35 F.3d 846 (3d Cir. 1994).    .29

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).    .    .    .10

Cooksey v Boyer, 289 F.3d 513 (8th Cir. 2002)).    .    .    .23

Doe v. Delie, 257 F.3d 309 (3d Cir. 2001).    .    .    .  33,35

Doe v. Sundquist, 106 F.3d 702 (6th Cir. 1997).    .24,25,26,27

Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965
    (3d Cir. 1982).    .    .    .    .    .    .    .    .    .11

FOP v. City of Philadelphia, 812 F.2d 105 (3d Cir. 1999). 21,22

Harris v. Thigpen, 941 F.2d 1495 (11th Cir. 1991).    .    .33

Hauptmann v. Wilentz, 570 F. Supp. 351, (D.N.J. 1983).  .  .30

In re Crawford, 194 F.3d 954 (9th Cir. 1999).    .    .    .23

In re Rausch, 197 B.R. 109 (D. Nev. 1996).    .    .    .    .23

Ingerman v. Delaware River Port Auth.,
    630 F. Supp. 2d 426, 446 (D.N.J. 2009).    .    .    .    .24

Leveto v. Lapina, 258 F.3d 156 (3d Cir. 2001).    .    .  32,35

Malley v. Briggs, 475 U.S. 335 (1986).    .    .    .    .    .17

Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,
    475 U.S. 574 (1986).   .   .   .   .   .   .   10,11

McGowan v. Maryland, 366 U.S. 420 (1960).   .   .   .   17,30

Mills v. New Jersey Atlantic City Dep't of Vital
    Statistics, 148 N.J. Super. 302 (Ch. Div. 1977).   .   .26

Nunez v. Pachman, 578 F.3d 228 (3d Cir. 2009).   .22,23,26,27,28

O'Malley v. Brierley, 477 F.2d 785 (3d Cir. 1973).   .   .30

Paul v. Davis, 424 U.S. 693 (1976).   .   .   .   .   .19

Paul P. v. Verniero, 170 F.3d 396
    (3d Cir. 1999).   .   .   .   .   .   .   23,24,26,27,34

Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808
    (2009).   .   .   .   .   .   .   .   .   17,18,31,35

People of the State of California v. Federal
    Communications Commission, 75 F.3d 1350 (9th Cir. 1996).   .24

Saucier v. Katz, 533 U.S. 194 (2000).   .   .   .   17,18,30

Smith v. Maryland, 442 U.S. 735 (1979).   .   .   .   .24

Thomas v. Independence Twp., 463 F.3d 285.   .   .   .   .31

Trap Rock Indus. v. Local 825, 982 F.2d 884 (3d Cir. 1992).   .11

United States v. Raines, 362 U.S. 17 (1960).   .   .   .   .30

United States v. Westinghouse Electric Corp., 638 F.2d 570
    (3d Cir. 1980).   .   .   .   .   .   .19,20,21,26,29

Whalen v. Roe, 429 U.S. 589 (1977).   .   .   .19,20,21,26,29,34

Wilson v. Layne, 526 U.S. 603 (1999).   .   .   .   .   .31

iii

## UNITED STATES CODE

42 U.S.C. § 1983   .   .   .   .   .   .   .   .   .   1

## STATUTES

N.J.S.A. 2C:7-1 et seq.   .   .   .   .   .   .   .23

N.J.A.C. 8:2-1.5(a).   .   .   .   .   .   .   .27

N.J.S.A. 9:3-52.   .   .   .   .   .   .   .27

N.J.S.A. 26:8-4.   .   .   .   .   .   .   .27

N.J.S.A. 26:8-28a.   .   .   .   .   .   .   .27

N.J.S.A. 26:8-40.1.   .   .   .   .   .   .   .27

N.J.A.C. 10:121A et seq.   .   .   .   .   .   27,28

N.J.A.C. 10:121C et seq.   .   .   .   .   .   .28

Tenn. Code Ann. § 36-1-127(c)(1).   .   .   .   .   .24

## FEDERAL RULES

Fed. R. Civ. P. 56(c)   .   .   .   .   .   1,10

## MISCELEANOUS

Erwin Chemerinsky, Constitutional Law, Principles
   and Policies, Third Edition, (Aspen Publishers 2006).   .34


Joseph G. Cook & John L. Sobieski, Jr., Civil Rights Actions
   (Matthew Bender & Co. 2009).   .   .   .   .   .34

iv

## I.   INTRODUCTION

Defendants Debra Boehme ("Defendant Boehme") and Barbara Parnes ("Defendant Parnes") (collectively "Defendants"), by their undersigned counsel, move under Fed. R. Civ. P. 56(c) for an order granting summary judgment in their favor. Plaintiff's civil rights claims against them fail and should be dismissed with prejudice.

Plaintiff's complaint seeks damages under 42 U.S.C. § 1983 for alleged violations of her privacy. The complaint alleges that Defendants improperly disclosed Plaintiff's identity to her biological daughter, Denine Howell ("Ms. Howell"), who she gave up for adoption over thirty years ago. The complaint further alleges that Defendants disclosed identifying information of Jenine Blackwell ("Ms. Blackwell"), Ms. Howell's biological sister, thereby allowing Ms. Howell to "ascertain Plaintiff's constitutionally and statutorily protected identity." These claims fail for two reasons.

First, Defendants never disclosed Plaintiff's identifying information to Ms. Howell. And, they only revealed her daughter Jenine Blackwell's identifying information after receiving explicit permission to do so. Second, Defendants enjoy qualified immunity. Defendants' alleged disclosure did not implicate a recognized

constitutional right.  And, the right at issue – Plaintiff's right to conceal her identity as Ms. Howell's birth mother - was not clearly established when the alleged disclosure occurred.  Plaintiff's claims, thus, fail as a matter of law and the entry of summary judgment in Defendants' favor is proper.

## II.   STATEMENT OF FACTS

### A.   Plaintiff Gives Up Her Daughter, Denine Howell, for Adoption.

This case is about Plaintiff Renee Blackwell placing her daughter, Denine Howell, for adoption over thirty years ago and Ms. Howell's search for her birth family.  See Defendants' Statement of Undisputed Material Facts ("Def. Stmt."), ¶ 1-4.  Plaintiff gave up Ms. Howell for adoption because Plaintiff "could not afford to care for her in a manner in which she should have been cared for."  See Def. Stmt., ¶ 1.  The adoption was handled by the State of New Jersey Department of Children and Families, Division of Youth and Family Services, which at the time of Ms. Howell's adoption was called the Department of Institutions and Agencies, Bureau of Children's Services.  Id. at ¶ 2.

As an adult, Ms. Howell decided to search for her birth family.  Id. at ¶ 3.  Plaintiff, however, wanted no contact with Ms. Howell because according to Plaintiff,

Ms. Howell was the product of a rape.  Id. at ¶¶ 4-5.

**B.   Ms. Howell Contacts the New Jersey
      Adoption Registry About Her Birth Family.**

To help search for her birth family, Ms. Howell
contacted the New Jersey Adoption Registry (the "Registry")
on December 17, 2007.  Id. at ¶ 6.  The Registry - a branch
of the Division of Youth and Family Services that provides
services to adult adoptees - is authorized to disclose non-
identifying background information to adult adoptees and it
can disclose identifying information[2] with the permission of
a birth family member.  Id. at ¶¶ 7-8, 11-12.  Ms. Howell
spoke to Registry employee Defendant Barbara Parnes on
December 17, 2007 and formally requested a search for her
her biological mother.  Id. at ¶ 13.

**C.   The Registry's Search for Ms. Howell's Birth Family.**

After speaking with Ms. Howell, on December 17, 2007,
Defendant Parnes sent her an adoption registry application,
which would allow the Registry to search for Ms. Howell's

---

[1]   Non-identifying information is "all available
information on the characteristics and background of the
adoptee and the adoptee's birth family except information
identifying the adoptees' birth family and information that
enables them to determine the location of the birth
family."  See Def. Stmt., ¶ 9.

[2]  Identifying information is "information identifying
the adoptees' birth family and information that enables
them to determine the location of the birth family" and
includes "a name and address, but also a city, anything
that…could lead to someone's identity."  See Def. Stmt., ¶
10.

biological family members.  <u>Id.</u> at ¶ 14.  Ms. Howell returned the completed application to Defendant Parnes on January 26, 2008.  <u>Id.</u> at ¶ 14.  Defendant Parnes filed Ms. Howell's application, which would be processed in the order it was received.  <u>Id.</u> at ¶ 15.

Defendant Dolores Helb, who also worked in the Registry, was then assigned to conduct the actual search for Ms. Howell's birth family.  <u>Id.</u> at ¶ 17.  She started the search by sending a letter to Plaintiff on August 11, 2008.  <u>Id.</u> at ¶ 18.  The August 11, 2008 letter stated that Defendant Helb was searching for "a Renee M. Blackwell" "on an important family matter," specifically that an adult adoptee was seeking "information about, and possible contact with" her birth family.  <u>Id.</u> at ¶ 19.  The letter did not disclose Ms. Howell's identity, nor did it identify Plaintiff as her birth mother.  <u>Id.</u> at ¶ 22.  It did, however, ask Plaintiff to review an "enclosed form which can be used to indicate whether or not you are the person I am seeking, and/or if you are interested in pursuing this matter."  <u>Id.</u> at ¶ 20.  The form was a "release" that gave Plaintiff the options of disclosing or withholding her identity from Ms. Howell.  <u>Id.</u> at ¶ 21.

Plaintiff did not return the form or otherwise respond to the August 11, 2008 letter, but she nevertheless claims

she neither wanted contact with Ms. Howell nor wanted her identify revealed to her. Id. at ¶ 23.

Having heard nothing from Plaintiff, Defendant Helb told Ms. Howell that she "could not share any information with her" about her birth mother, but could search for biological siblings. Id. at ¶ 24. Defendant Helb found that Ms. Howell had a brother, who had recently been released from prison, and a sister[3], Ms. Blackwell, who lived in southern New Jersey. Id. at ¶ 25. Defendant Helb found an address for Ms. Blackwell and sent her a letter (much like the letter sent to Plaintiff) on December 1, 2008 stating that she was "searching for the family of Renee Blackwell at the request of an adult adoptee in search of her birth family." Id. at ¶ 27. The December 1, 2008 letter also stated that Ms. Blackwell "may be related" to the adult adoptee and asked her to review the same release Plaintiff had received with her August 11, 2008 letter. Id. at ¶ 28. Ms. Blackwell completed the form, returned it to the Registry on December 2, 2008 and authorized the Registry to release her phone number to Ms. Howell. Id. at ¶ 29.

---

[3] Ms. Howell had learned earlier, through the Registry's search for non-identifying information, that she had a biological brother and sister. See Def. Stmt., ¶ 26.

Defendant Helb received Ms. Blackwell's completed form on December 9, 2008 and told Ms. Howell the "news" that she could contact her birth sister, Ms. Blackwell, that day. Id. at ¶ 30.

D.   **Contact Between Ms. Howell and Her Sister, Jenine Blackwell.**

By December 16, 2008, Ms. Blackwell had not heard from her sister Ms. Howell; so she called the Registry on the 16th and spoke to Defendant Parnes about the situation. Id. at ¶ 31. That day, Defendant Parnes called Ms. Howell who explained that Ms. Blackwell's phone number was "out of order." Id. at ¶ 32. Defendant Parnes then called Ms. Blackwell (also on December 16th) and suggested she call Ms. Howell directly. Id. at ¶ 33. The sisters spoke for the first time later on December 16th. Id. at ¶ 34.

After this string of phone calls among Defendant Parnes, Ms. Howell and Ms. Blackwell, Plaintiff called Defendant Parnes, also on December 16, 2008, claiming that "someone (Denine [Howell]) showed up at her doorstep on Saturday." Id. at ¶ 35. Plaintiff was "irate" and demanded to know how "this person" got her address. Id. at ¶ 36. Despite Defendant Parnes' assurances that the Registry "does not give out identifying information without the consent of the person concerned," Plaintiff told her

6

the Division "had no right to contact her daughter [Ms. Blackwell]" and "had no right to invade her privacy." Id. at ¶ 37. Plaintiff said her "failure to respond" to the August 11, 2008 letter from the Registry "was her way of saying that she did not want" to be in contact with her adult daughter, Ms. Howell. Id. at ¶ 38. Plaintiff then threatened "to get a lawyer." Id. at ¶ 39.

She later sued several Defendants, including Defendant Parnes, Defendant Helb and Defendant Debra Boehme[4], claiming they improperly disclosed to Ms. Howell, Plaintiff's identifying information and the identifying information of her adult daughter, Jenine Blackwell. Id. at ¶ 40.

### E. The Registry's Non-Disclosure of Plaintiff's Identifying Information.

Contrary to Plaintiff's claim, Defendants never disclosed her identifying information to Ms. Howell and only provided Ms. Blackwell's phone number after receiving explicit authorization from Ms. Blackwell to do so.

Defendant Helb testified that "without [Plaintiff's] permission" "I was not authorized" "to give out her

---

[4] Defendant Boehme supervised the Registry when Ms. Howell sought its help in searching for her birth family. Defendant Boehme had no substantive conversations with Plaintiff, Ms. Howell or Ms. Blackwell at any point during Ms. Howell's family search and she did no work on the investigation into Ms. Howell's birth family. See Def. Stmt., ¶ 41.

identity." Id. at ¶ 42. She told Ms. Howell that she "had not heard from the birth mother" and that she "could not share any information with her." Id. at ¶ 43. When asked "[d]id you give any information regarding the biological mother," Defendant Helb said again "[w]e can't give identifying information." Id. at ¶ 44. Regarding the disclosure of Jenine Blackwell's information to Ms. Howell, Defendant Helb said that the Registry's manual permits the Registry to search for biological siblings, to share their contact information if authorized to do so, and that the Registry disclosed Jenine Blackwell's phone number to Ms. Howell with Ms. Blackwell's express consent. Id. at ¶ 45.

Defendant Parnes similarly testified "we do not give out identifying information; would not have given out her address." Id. at ¶ 46. When asked "did you…give any information out concerning Renee Blackwell to Denine," Defendant Parnes said "No." Id. at ¶ 47.

Defendant Boehme also explained that identifying information of birth parents is "closed" and cannot be released without the parent's permission. Id. at ¶ 48. She knew Plaintiff "didn't want her identity released" and said that Plaintiff's "identity was not released." Id. at ¶ 49.

Ms. Howell corroborates Defendants' non-disclosure.

After learning of this lawsuit, she contacted the New Jersey Attorney General's Office to "show that the State…did not reveal anything to me regarding [Renee Blackwell's] identity." Id. at ¶ 50. Rather, Ms. Howell discovered Plaintiff's name and contact information on her own by doing independent computer searches using only the name of her sister, Jenine Blackwell. Id. at ¶¶ 51-53. When asked if the Registry released any information to her, Ms. Howell said "[n]o, no, no. DYFS just gave me Jenine's name because Jenine responded and said she wanted to be contacted…Ms. Parnes did nothing at all." Id.

Plaintiff herself has no valid evidence that her identity was revealed by Defendants. She simply assumes that "the State went on and disclosed my information anyhow" "regardless of whether or not I returned the [August 11, 2008] letter." Id. at ¶ 54. Aside from this assumption, Plaintiff has no other information about what the State told Ms. Blackwell about her birth mother or the circumstances of her birth. Id. at ¶ 55. When asked if she had any information that Defendant Helb gave Ms. Howell her address, Plaintiff said "no." Id. at ¶ 56. When asked if she knew how Ms. Howell obtained her full name, Plaintiff said "[n]o." Id. at ¶ 57. When asked if she had any other information about how Ms. Howell found her,

Plaintiff said "[n]o."   Id. at ¶ 58.

## III. ARGUMENT

### A. Summary Judgemnt Standard Under Fed. R. Civ. P. 56(c).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   Where, as here, the evidence - when viewed in a light most favorable to the non-moving party - will not permit a rational fact-finder to resolve the alleged disputed issue in favor of the non-moving party, summary judgment must be granted in favor of the moving party.   Anderson v. Liberty Lobby, 477 U.S. 242, 252-55 (1986).

Although the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party cannot simply "rest upon the mere allegations or denials of his pleading." Anderson, 477 U.S. at 248; see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10, 586-587 (1986).   Mere allegations, general denials, vague

statements, or suspicions will not defeat a properly presented motion for summary judgment. Trap Rock Indus. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Rather, the non-moving party must provide specific facts showing that there is a genuine issue for trial. Matsushita, 475 U.S. 585-587; Anderson, 477 U.S. at 257. A proper motion for summary judgment will not be defeated by merely colorable or insignificantly probative evidence. Anderson, 477 U.S. at 249-50.

Applying these standards, summary judgment in Defendants' favor is proper. The factual basis of Plaintiff's claims - that Defendants disclosed her identity to Ms. Howell - is undisputedly untrue. Indeed, the record evidence shows that none of the Defendants - neither Defendant Parnes, Defendant Boehme, nor Defendant Helb - revealed Plaintiff's identifying information.

Even if they did, Defendants enjoy qualified immunity from Plaintiff's claims. The alleged disclosure of Plaintiff's identity as Ms. Howell's birth mother did not implicate a recognized constitutional right. And, the right was not clearly established at the time of the alleged disclosure. Plaintiff's complaint, thus, fails as a matter of law and should be dismissed with prejudice.

**B.**   **Plaintiff's Complaint Should Be Dismissed:**
         **There Are No Facts To Support Plaintiff's Claims.**

The factual predicate behind Plaintiff's entire complaint is that Defendants disclosed her identifying information to her daughter Ms. Howell, despite Plaintiff's wishes that the information not be revealed.   See First Amended Complaint, Declaration of Karen L. Jordan ("Jordan Decl."), Exhibit B, ¶ 1.   Also, underlying Plaintiff's complaint is the contention that Defendants disclosed to Ms. Howell the information of her biological sister, Ms. Blackwell, "so as to allow [Ms. Howell]…to ascertain Plaintiff's constitutionally and statutorily protected identity."   Id.   These factual allegations are false.   Each Defendant testified consistently that they disclosed nothing about Plaintiff's identity during Ms. Howell's search for her birth family.

Defendant Helb, who performed the search, testified that "without [Plaintiff's] permission" "I was not authorized" "to give out her identity."   See April 26, 2010 Deposition of Dolores Helb, Jordan Decl., Exhibit D, pp. 16-17, 19, 25.   Defendant Helb told Ms. Howell that she "had not heard from the birth mother" and that she "could not share any information with her."   Id. at p. 19.   When asked "[d]id you give any information regarding the

biological mother," Defendant Helb again said "[w]e can't give identifying information." Id. at p. 24.

Defendant Parnes, who processed Ms. Howell's search request, likewise testified that "we do not give out identifying information; would not have given out her address." See April 30, 2010 Deposition of Barbara Parnes, Jordan Decl., Exhibit E, p. 14. When asked pointedly "did you…give any information out concerning Renee Blackwell to Denine," Defendant Parnes said, under oath, "[n]o." Id. at p. 14.

Defendant Boehme, who supervised the Registry, also explained that identifying information of birth parents is "closed" and cannot be released without the parent's permission. See See April 30, 2010 Deposition of Debra Boehme, Jordan Decl., Exhibit F, pp. 15-18. She knew Plaintiff wanted her identity concealed and said that her "identity was not released." Id. at p. 33.

Not only do Defendants confirm the non-disclosure of Plaintiff's identifying information, but Denine Howell – the person with no interest in this lawsuit and with the most knowledge about whether Plaintiff's identity was revealed – corroborated that it never was. Indeed, after learning about this lawsuit, Ms. Howell contacted the New Jersey Attorney General's Office to "show that the

State…did not reveal anything to me regarding [Renee Blackwell's] identity." <u>See</u> June 15, 2009 Voluntary Statement of Denine Howell, Jordan Decl., Exhibit C, DCF61.

Rather, Ms. Howell discovered Plaintiff's name and contact information on her own through independent computer searches using the name of her sister, Jenine Blackwell. <u>Id.</u> at DCF63.   When asked if she did "anything else…to…locate" her sister or birth mother, Ms. Howell said:

> I took her [Jenine Blackwell's] name and I went on line and…I did a search.   I just started cross-referencing information, and that's how I figured out [Renee] Blackwell was my biological mom. …

When asked if she did any searches on Plaintiff Renee Blackwell, Ms. Howell said:

> *No!   I didn't know my mom's name*, so I did it on my sister, I had know [sic] idea who my mom was, so I did the search on my sister…relatives come up…so you…do a little bit of playing around…to try to put the information together, so once I kinda put two and two together I then did a search on Renee to see if it cross referenced Jenine.

<u>Id.</u> at DCF63-DCF64 (emphasis added).   When asked if the Registry released any information to her, Ms Howell said:

> *[n]o, no, no.*   DYFS just gave me Jenine's name because Jenine responded and said she wanted to be contacted.   I being the person I am, I did the rest all by myself.   *[Defendant] Parnes did nothing at all.*

14

_Id._ at DCF65 (emphasis added).

Plaintiff herself has no reliable information that Defendants did anything to disclose her identifying information. She merely assumes that "the State went on and disclosed my information anyhow" "regardless of whether or not I returned the [August 11, 2008] letter." _See_ March 11, 2010 Deposition of Renee Blackwell, Jordan Decl., Exhibit A, pp. 16-17, 26-28. Plaintiff admits knowing nothing about what the State told Ms. Howell about Plaintiff or the circumstances of Ms. Howell's birth. _Id._ at pp. 16-17, 26-28. When Plaintiff was asked if she had any information that Defendant Helb gave Ms. Howell her address, Plaintiff said "no." _Id._ at p. 34. When asked if she knew how Ms. Howell obtained her full name, Plaintiff said "[n]o." _Id._ at p. 36. And, when asked if she had any other information about how Ms. Howell found her, Plaintiff said "[n]o." _Id._ at p. 37.

With this testimony from parties and non-parties alike, "there is no genuine issue as to" the fact that Defendants did not disclose Plaintiff's identifying information to Ms. Howell. Plaintiff's complaint, therefore, fails and Defendants are entitled to a judgment as a matter of law. Fed. R. Civ. P. 56.

Plaintiff's contention that Defendants revealed to Ms.

15

Howell the information of her birth sister Jenine Blackwell "so as to allow" Ms. Howell to "ascertain Plaintiff's… protected identity" is also unsupported.

As an initial matter, the Registry is authorized to disclose to adult adoptees non-identifying information of biological siblings.  See Jordan Decl., Exhibit F, pp. 9-10; see also Jordan Decl., Exhibit C, DCF38-DCF40 (Field Operations Casework Policy and Procedure Manual).  The Registry is likewise authorized to provide identifying information of biological siblings if they consent to disclosure.  Id.  Here, Ms. Howell learned she had a sister under this policy to provide non-identifying information. See Jordan Decl., Exhibit D, pp. 19-20.  Ms. Howell later learned her sister's identity because her sister explicitly consented to the release of her phone number.  See Jordan Decl., Exhibit C, DCF2, DCF4; Exhibit D, pp. 22-23; Exhibit E, p. 8; see also March 11, 2010 Deposition of Jenine Blackwell, Jordan Decl., Exhibit G, pp. 12-13, 28.

It was only after learning her sister's name that Ms. Howell independently investigated her birth mother's identity.  It was through her own detective work - not through any information disclosed by Defendants - that enabled Ms. Howell to find out who her birth mother was. See Jordan Decl., Exhibit C, DCF60-DCF66.

At the end of the day, Plaintiff's claim about the disclosure of Ms. Blackwell's information is nothing more than Plaintiff's attempt to bring a vicarious privacy claim on behalf of her adult daughter. As discussed at length later, Plaintiff has neither the right nor the standing to do this. Indeed, she has no constitutional right to privacy in her adult daughter's identifying information. See McGowan v. Maryland, 366 U.S. 420, 429 (1960). This aspect of Plaintiff's complaint, thus, fails as a matter of law and should be dismissed.

### C. Plaintiff's Complaint Should Be Dismissed: Defendants' Enjoy Qualified Immunity.

Qualified immunity provides extensive protection for government officials. Essentially, "all but the plainly incompetent or those who knowingly violate the law" enjoy qualified immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986). A qualified immunity analysis focuses on two inquiries: (1) whether the conduct in question violated a constitutional right; and (2) whether the right at issue was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2000); Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 815-16 (2009). Originally in Saucier, the Court mandated that a reviewing court must first determine whether the conduct violated a constitutional right before

addressing the second step. Saucier, supra, 533 U.S. at 201. Recently, Pearson modified the procedure in Saucier and held that the two-step analysis is not an inflexible one and that a trial court may exercise its discretion in deciding which prong to address first. Pearson, supra, 129 S. Ct. at 818. The Court noted that the original procedure in Saucier departed "from the general rule of constitutional avoidance and [ran] counter to the older, wiser judicial counsel not to pass on questions of constitutionality...unless such adjudication is unavoidable." Id. at 821 (quotations and citations omitted). Therefore, if a reviewing court first decides that the constitutional right at issue was not clearly established at the time of the alleged misconduct, the analysis ends, and the defendant is entitled to qualified immunity. Id. at 822.

Here, Defendants are entitled to qualified immunity. First, the alleged disclosure of Plaintiff's identity as a birth mother does not implicate a protected privacy interest under the United States Constitution, regardless of whether the information may be considered confidential under state law. Thus, Defendants' alleged actions did not deprive Plaintiff of a constitutional right. Second, the right at issue - the right of a mother to conceal her

identity from her biological daughter - was not clearly established at the time. A reasonable State official would not know that the alleged conduct would be unlawful.

     1.   **Defendants' Alleged Disclosure of Plaintiff's Identity to her Biological Daughter Did Not Violate Plaintiff's Right to Privacy Under the Federal Constitution.**

Though the federal constitution does not explicitly confer a right to privacy, the Supreme Court of the United States has recognized "zones of privacy" protected under the substantive component of the due process clause of the Fourteenth Amendment. <u>Paul v. Davis</u>, 424 <u>U.S.</u> 693, 712-13 (1976). The personal rights found under the privacy guarantee must be "fundamental" or "implicit in the concept of ordered liberty." <u>Id.</u> at 713. The Court identified two categories of privacy interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." <u>Whalen v. Roe</u>, 429 <u>U.S.</u> 589, 599-600 (1977) (footnotes omitted). Plaintiff Renee Blackwell maintains that the first category is implicated here - the right "not to have an individual's private affairs made public by the government." <u>United States v. Westinghouse Electric Corp.</u>, 638 <u>F.2d</u> 570, 577 (3d Cir. 1980); <u>see also</u> <u>Whalen</u>, <u>supra</u>, 429 <u>U.S.</u> at 600 n.24.

This right to informational privacy, however, is only triggered when the underlying information involves highly intimate aspects of personal life. So for example, in Whalen, the Court addressed whether New York may collect the names and addresses of individuals who obtained prescription drugs. Whalen, supra, 429 U.S. at 591. A group of patients and two physician associations challenged the statute that mandated the collection of such information, id. at 595, and argued, among other things, that the statute impaired "their interest in the non-disclosure of private information." Id. at 600. The Court, however, held that the statute did not present a "sufficiently grievous threat" to privacy interests which would amount to a constitutional harm. Ibid. Notably, New York had mechanisms in place to protect data confidentiality and criminalized the public disclosure of patient identity. See id. at 594-95.

Following Whalen, the United States Court of Appeals for the Third Circuit in Westinghouse addressed the applicability of the constitutional privacy protection to employee medical records. There, the government subpoenaed employee medical records from an employer during an investigation into the presence of health hazards. Westinghouse, supra, 638 F.2d at 573. After the employer

demanded certain conditions before the release of the medical information, the government filed suit to enforce the subpoena. Ibid. The trial court agreed with the government and ordered full enforcement. Ibid. On appeal, the Third Circuit, relying on the first privacy component in Whalen, held that an "employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection." Westinghouse, supra, 638 F.2d at 577.

The Third Circuit recognized that information regarding one's body holds a "special character." Ibid. Moreover, it noted that the medical records sought by the government in Westinghouse are much more extensive than the prescription records at issue in Whalen. Ibid. Nevertheless, the Court also recognized that the right to control this information is not absolute and may give way to public health concerns. Id. at 578; see also FOP v. City of Philadelphia, 812 F.2d 105, 110 (3d Cir. 1999) (holding that "there is no absolute protection against disclosure. Disclosure may be required if the government interest in disclosure outweighs the individual's privacy interest.") After weighing the competing interests involved and determining that the government had adequate procedural safeguards for record safekeeping, the Court

21

found that the public interest in research and investigation justified the "minimal intrusion into the privacy which surrounds the employees' medical records." Id. at 580.

But, if a person does not have a reasonable expectation that the information is confidential, then the right to privacy is not triggered, regardless of whether the information is considered private under state law. Recently, the Third Circuit in Nunez v. Pachman, 578 F.3d 228 (3d Cir. 2009), held that an expunged criminal record in New Jersey is not a protected privacy interest under the federal constitution.  Generally, a criminal record in New Jersey is publicly available for ten years.  Id. at 231. Media accounts of the criminal act, moreover, may continue even after an expungement.  Ibid.  Regardless of whether New Jersey law may create a reasonable expectation of privacy, the expunged criminal record does not enjoy privacy protection under the federal constitution.  Id. at 231-32.  The Court emphasized that "the federal right to privacy is significantly narrower than the right to privacy protected by state tort law."  Id. at 232.  A deprivation of the right to privacy occurs when "the information disclosed must be either a shocking degradation or an egregious humiliation of her to further some specific state

interest, or a flagrant [breach] of a pledge of confidentiality which was instrumental in obtaining the personal information." _Id._ at 232 n.8 (emphasis in original) (citing _Alexander v. Peffer_, 993 _F.2d_ 1348, 1350 (8th Cir. 1993). Ultimately, state law does not create a constitutional right to privacy. _Nunez_, _supra_, 578 _F.3d_ at 233.

Importantly, not every disclosure of personal information triggers constitutional protections. _Id._ at 232 n.10 (citing _Cooksey v Boyer_, 289 _F.3d_ 513, 515-16 (8th Cir. 2002)); _In re Rausch_, 197 _B.R._ 109 (D. Nev. 1996), _aff'd sub nom_, _In re Crawford_, 194 _F.3d_ 954 (9th Cir. 1999). The disclosure must involve highly intimate aspects of personal life. _See_ _Nunez_, _supra_, 578 _F.3d_ at 232 n.8.

Analogous to _Nunez_, public records, such as arrest records and criminal records, are not accorded privacy protection.[5] In _Paul P. v. Verniero_, 170 _F.3d_ 396, 398 (3d Cir. 1999), the Third Circuit upheld New Jersey's Megan's Law, _N.J.S.A._ 2C:7-1 _et seq._, which requires individuals, convicted of certain sex crimes, to comply with a system of registration and community notification. The plaintiffs asserted that Megan's Law violated their constitutionally

---

[5] Publication of official acts, such as an arrest, does not violate a fundamental privacy right. _Paul_, _supra_, 424 _U.S._ at 713.

protected right to privacy by, among other things, publicly disseminating information about them. Paul P., supra, 170 F.3d at 399. The Court rejected their challenge, finding that the plaintiffs' status as sex offenders, standing alone or in tandem with other related information, is not a protected privacy interest. Id. at 403.[6]

In arriving at its holding in Paul P., the Third Circuit noted, with approval, a Sixth Circuit decision which found that adoption records are not entitled to privacy protection. See Paul P., supra, 170 F.3d at 402, 405 (citing Doe v. Sundquist, 106 F.3d 702 (6th Cir. 1997)). In Tennessee, the state legislature enacted a statute allowing an adopted person over twenty-one years of age to access her adoption records. Doe, supra, 106 F.3d at 704; Tenn. Code Ann. § 36-1-127(c)(1). Under the state law, a parent or other relative may register to prevent contact by the adopted person, referred to as a "contact veto." Doe, supra, 106 F.3d at 705. Before the disclosure of the identity of an adopted person's relatives, the state

---

[6]   Consistent with Paul P., personal identifiers such as social security numbers and telephone numbers do not enjoy privacy protections under the federal constitution. Ingerman v. Delaware River Port Auth., 630 F. Supp. 2d 426, 446 (D.N.J. 2009); People of the State of California v. Federal Communications Commission, 75 F.3d 1350, 1361-62 (9th Cir. 1996) (relying on Smith v. Maryland, 442 U.S. 735, 743 (1979)).

is obligated to conduct a search for the relatives and allow them the opportunity to exercise their contact veto. Ibid. Nevertheless, "the relatives of an adopted person can veto only contact, not disclosure of their identities." Ibid. The plaintiffs, two birth mothers, an adoptive couple, and a child-placing agency, sought to block enforcement of the statute. Id. at 704. The trial court denied their motion for a preliminary injunction, and the plaintiffs appealed. Ibid.

In affirming, the Sixth Circuit rejected the plaintiffs' claim that the Tennessee statute violated "their right to avoid disclosure of confidential information." Id. at 705. It described the public dimension of a birth, which counseled against privacy protection under the federal constitution:

> [W]e note our *skepticism that information concerning a birth might be protected from disclosure* by the Constitution. A birth is simultaneously an intimate occasion and a public event - the government has long kept records of when, where, and by whom babies are born. Such records have myriad purposes, such has furthering the interest of children in knowing the circumstances of their birth.
>
> [Id. at 705.] (emphasis added).

In this case, the alleged disclosure of Plaintiff's

identity as Ms. Howell's birth mother is not an interest protected under the United States Constitution. Unlike the sensitive prescription records in Whalen or detailed medical records in Westinghouse, information regarding the existence of a birth and the resulting biological relationship do not enjoy privacy protections under the federal constitution.   Whether New Jersey treats records surrounding an adoption as confidential is of no moment.[7] As the Court declared in Nunez, information categorized as confidential under state law bears no relation to whether such information enjoys privacy protection under the federal constitution.

The Sixth Circuit's analysis in Doe, cited approvingly by the Third Circuit in Paul P., is persuasive.   A birth of a child is a public event.   As the Sixth Circuit recognized, many states keep extensive records of births occurring within their jurisdictions.   New Jersey is no different.   A birth certificate must be filed with the

_____

[7]   Though one trial level New Jersey case, Mills v. New Jersey Atlantic City Dep't of Vital Statistics, 148 N.J. Super. 302 (Ch. Div. 1977), recognizes some degree of privacy in adoption information, Defendants respected that privacy and disclosed the identifying information of Ms. Blackwell _only after receiving permission to do so.   See Jordan Decl., Exhibit C, DCF2, DCF4, Exhibit D, pp. 22-23 and Exhibit E, p. 8.   This disclosure was entirely consistent with and authorized by the Registry guidelines. See Jordan Decl., Exhibit C, DCF35-DCF40.

local registrar within five days of a birth.  N.J.S.A.
26:8-28a.  The woman who gives birth to the child "shall be
recorded as a parent" on the birth certificate.  N.J.A.C.
8:2-1.5(a).  Further emphasizing the State's legislative
policy in collecting such information, every physician,
midwife, or "other person having knowledge of the facts
relative to any birth...shall supply such information" upon
demand of the State registrar.  N.J.S.A. 26:8-4.

Similarly, the adoption process is not a purely
private event.  Adoptions records are kept by the clerk of
the court and the State Registrar.  N.J.S.A. 9:3-52;
N.J.S.A. 26:8-40.1 (articulating the framework for issuing
birth certificates for adopted children).  Agencies that
facilitate adoptions store information regarding the birth
parents so that the agencies may provide post-adoption
services.  N.J.A.C. 10:121A-5.9.  These agencies are
required to keep adoption case records for 99 years.
N.J.A.C. 10:121A-3.6(d).  These records are also open to
inspection by any number of authorized representatives.
N.J.A.C. 10:121A-3.6; N.J.A.C. 10:121A-2.3.  The Court in
Doe correctly noted its skepticism in extending
constitutional privacy protections to such records in light
of their public nature.  As discussed in Nunez and Paul P.,
public events, by their very nature, are not entitled to

27

privacy protections.

Like the Plaintiff in Nunez, Renee Blackwell did not have a reasonable expectation of privacy regarding the existence of her biological relationship with her natural child.  New Jersey provides adoption registry services to an adult adoptee.  N.J.A.C. 10:121C-6.2.  On request, an adult adoptee may seek the assistance of the State to locate the birth family.  Ibid.  Once initiated, the search will include the background information of the birth family, and ultimately, "sending letters to the last known addresses of all family members."   N.J.A.C. 10:121A-5.10; see N.J.A.C. 121C-6.2(a)(2) (directing that the search services of the State shall comply with N.J.A.C. 10:121A-5.10).  With these services in place for an adult adoptee, coupled with the existence of adoption records with the courts and adoption agencies, which are open to inspection by a variety of individuals, Plaintiff did not have a reasonable expectation that her relationship with her biological child would forever be confidential.

Ultimately, Plaintiff cannot prevail on her cause of action under federal law.  She does not enjoy privacy protection under the federal constitution for information that merely indicates a biological relationship with her daughter.  Under New Jersey law, a parent must disclose her

identity to the State within five days of a birth. Plaintiff's characterization of a right to privacy to such information is neither fundamental under the Fourteenth Amendment nor "implicit in the concept of ordered liberty." Further, the information does not involve highly intimate aspects of personal life, such as prescription records in Whalen or medical records in Westinghouse, which would implicate protected privacy interests. As Plaintiff cannot show that the Defendants deprived her of a constitutional right, her claims fail as a matter of law and should be dismissed.

To the extent that Plaintiff alleges a civil rights claim based on the disclosure of her children's identity, such a claim is barred. A plaintiff cannot assert a federal civil rights claim vicariously. Rights under the federal constitutional are personal, and another person, who was not deprived of a civil right, cannot bring a claim on behalf of someone who allegedly suffered the deprivation. Courts have consistently recognized that Section 1983 does not confer substantive rights, but simply provides a mechanism to vindicate federal rights granted elsewhere. Baker v. McCollan, 435 U.S. 137, 144 n.3 (1979); Albright v. Oliver, 510 U.S. 266, 271 (1994) (Rehnquist, C.J., plurality opinion); see Brown v. Borough

29

of Mahaffey, 35 F.3d 846, 850 (3d Cir. 1994).  Accordingly, the plaintiff must identify the personal right that has been infringed.  Albright, 510 U.S. at 271.  Moreover, a plaintiff may only "assert his own constitutional rights or immunities."  McGowan, 366 U.S. at 429, quoting United States v. Raines, 362 U.S. 17, 22 (1960).  The civil right asserted, therefore, may not be vicariously asserted by a third party; the litigant holding the right may only pursue it.  Ibid; O'Malley v. Brierley, 477 F.2d 785, 789 (3d Cir. 1973); Hauptmann v. Wilentz, 570 F. Supp. 351, 364 n.7 (D.N.J. 1983).

Accordingly, Plaintiff has no standing to bring a civil rights claim based on the alleged disclosure of her daughter's (Jenine Blackwell's) identity.

### 2.  Plaintiff's Alleged Right to Conceal Her Identity as a Birth Mother Was Not Clearly Established.

Determining if a right was clearly established involves the question whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  This must be "undertaken in light of the specific context of the case, not as a broad general proposition."  Id. at 201. Moreover, the right must be sufficiently clear so that a reasonable official understood that his actions violated

that right.   Anderson v. Creighton, 483 U.S. 635, 640 (1987).   This inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."   Wilson v. Layne, 526 U.S. 603, 614 (1999) (citations and quotations omitted).   A defendant who pleads qualified immunity is entitled to dismissal, prior to the start of discovery, when a plaintiff's allegations do not state a violation of clearly established law.   Thomas, 463 F.3d at 291.

Ultimately, qualified immunity will protect a state official from liability "when an officer reasonably believes that his or her conduct complies with the law." Pearson, supra, 129 S.Ct. at 823.   In Pearson, the Supreme Court found that police officers were entitled to qualified immunity when the Courts of Appeals were split on the constitutional question at issue, notwithstanding that the officers' own federal Circuit had not ruled on the issue. Ibid.   "[I]f judges thus disagree on a constitutional question, it is unfair to subject [state officials] to money damages for picking the losing side of the controversy."   Ibid. (quoting Wilson, supra, 526 U.S. at 618).

The Third Circuit has not hesitated in conferring

31

qualified immunity to officials when case law exhibited uncertainty on a constitutional issue. In <u>Leveto v. Lapina</u>, 258 <u>F.3d</u> 156, 159-60 (3d Cir. 2001), the plaintiffs brought a <u>Bivens</u>[8] action against numerous Internal Revenue Service agents, claiming that during the execution of a search warrant, the agents improperly patted and detained them without proper justification. While the Court concluded that the plaintiffs properly alleged a Fourth Amendment violation, it, nonetheless, held that the officials enjoyed qualified immunity. <u>Id.</u> at 166. The Court cited decisions from other Courts of Appeals as well as a leading treatise and found that these contrary authorities lend support for the officials' pat-down search of the plaintiffs. <u>Ibid.</u>

Regarding the prolonged detention, the Court engaged in a similar analysis, noting the questions left unanswered by a Supreme Court decision and the uncertainty that resulted in the lower courts. <u>Id.</u> at 172-73. Because reasonable officials would conclude that their conduct was lawful in light of the varied case law, qualified immunity applied. <u>Id.</u> at 166, 172.

---

[8]   Under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 <u>U.S.</u> 388, 397 (1971), a plaintiff may seek money damages against federal officials for violations of the Fourth Amendment.

Somewhat analogous to the issue presented here, the Third Circuit granted qualified immunity to state officials, who allegedly disclosed a prison inmate's HIV status to others. In Doe v. Delie, 257 F.3d 309, 317 (3d Cir. 2001), the Court found that a prisoner retained a constitutional "right to privacy in one's medical information," which would include an inmate's HIV status. The Court noted, though, that at the time of the disclosure, no court of appeals recognized such a right. Id. at 319. Only a "handful" of District Courts had done so. Ibid. It further acknowledged an Eleventh Circuit decision, which stated that the "precise nature and scope of the privacy right at issue...is rather ill-defined." Ibid (quoting Harris v. Thigpen, 941 F.2d 1495, 1513 (11th Cir. 1991)). Lastly, after review of numerous trial court decisions in other districts, the Court concluded that "none of these decisions, individually or collectively, makes it sufficiently clear to reasonable officials that their conduct violated a prisoner's federal constitutional right." Id. at 321. The lack of precedent in the Third Circuit, coupled with the unsettled and conflicting case law, further supported the absence of a clearly established right. Ibid.

Here, Defendants enjoy qualified immunity from

Plaintiff's claims.   Like the dilemma presented in <u>Leveto</u>, the Supreme Court's decision in <u>Whalen</u> and subsequent court decisions have left many unanswered questions.   <u>Whalen</u> itself does not firmly establish whether the right exists or whether the Court suggested the existence of the right. <u>See</u> <u>Whalen</u>, <u>supra</u>, 429 U.S. at 605-06 (declining to decide whether the unwarranted disclosure of private data implicates a privacy interest).[9]   Further, the Supreme Court had rarely addressed this issue of informational privacy, with <u>Whalen</u>, decided in 1977, being the last case to do so. <u>See</u> Erwin Chemerinsky, <u>Constitutional Law, Principles and Policies</u>, Third Edition, at 855-56 (Aspen Publishers 2006).

Within the Third Circuit, the Court has recognized a privacy interest in medical records, but the question of disclosing a mother's identity to her birth daughter has not been directly addressed.   The Court in <u>Paul P.</u>, however, cited the Sixth Circuit's decision in <u>Doe</u>, which found that adoption records are not entitled to privacy

---

[9]   <u>See also</u> Joseph G. Cook & John L. Sobieski, Jr., <u>Civil Rights Actions</u>, ¶ F15, at F15-3 (Matthew Bender & Co. 2009) ("It is not clear whether <u>Whalen</u> specifically recognizes a general constitutional right of privacy to non-disclosure of personal information by the government or merely suggested the existence of such a constitutional right.   Arguments in both directions have been furthered by courts and commentators.   <u>Whalen's</u> ambiguity has generated wide disagreement among lower federal courts as to whether, and to what extent, there exists a general constitutional right to nondisclosure.") (footnotes omitted).

protections.   Considering the absence of case law both at the Supreme Court and this Circuit, reasonable state officials in Defendants' positions may very well rely on the Sixth Circuit's decision, cited by the Third Circuit, which is highly analogous to the underlying facts here. This is especially true when this Circuit has previously held that public events, such as arrests and criminal records, do not enjoy privacy protections, and in many respects, a birth in New Jersey is not a purely private event.

With the exception of the Sixth Circuit, it appears that no Circuit has directly addressed the right to privacy in this particular context.   As <u>Pearson</u> recognized, Defendants should not be subject to money damages by relying the Sixth Circuit's decision, the only published case on point.   Considering the resounding absence of case law in this Circuit, and the unsettled nature of the right to privacy itself as demonstrated in <u>Leveto</u> and <u>Delie</u>, the right at issue here was not clearly established at the time of the events, and Defendants are entitled to qualified immunity.

## IV.   CONCLUSION

For all the foregoing reasons, Plaintiff's complaint fails as a matter of law and should be dismissed with prejudice.

                              Respectfully submitted,

                              PAULA T. DOW
                              ATTORNEY GENERAL OF NEW JERSEY


                         By: /s/ Karen L. Jordan
                              Karen L. Jordan
                              Deputy Attorney General


DATED:  July 9, 2010

36