**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        )
RENEE BLACKWELL,                        )
                                        )
            Plaintiff,                  )          Hon. Garrett E. Brown, Jr.
                                        )
        v.                              )          Civil Action No. 09-3004 (GEB)
                                        )
DOLORES HELB, DEBRA BOEHME, and         )
BARBARA PARNES, et al,                  )          **MEMORANDUM OPINION**
                                        )
            Defendants.                 )
_____)

**BROWN**, Chief Judge:

This matter comes before the Court upon Defendant Dolores Helb's motion for summary judgment (Doc. No. 36) against Plaintiff Renee Blackwell. This Court has considered the parties' arguments and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the following reasons, the Court will grant Defendant's motion.

## I.    BACKGROUND

This civil rights dispute concerns the privacy interest in sealed adoption records maintained by a state government agency.  In discussing the relevant facts, the Court draws all reasonable inferences in favor of the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The following facts are undisputed.  Approximately thirty years ago, Plaintiff Renee Blackwell placed her daughter, whom this Court will refer to as "DH ," up for adoption in the State of New Jersey.  (Def.'s L. Civ. R. 56.1 Statement ("Def.'s Statement") ¶ 1; Pl.'s L. Civ. R.

1

56.1 Resp. ("Pl.'s Statement") ¶ 1.)  Plaintiff avers that DH was conceived through rape, and that she placed DH up for adoption because she was incapable of providing for an infant at that time. (Am. Compl. ¶ 13; Pl.'s Resp. Br. at 2.[1])  Plaintiff claims that she wished to put the traumatic event behind her and did not wish to have any future contact with DH.  (Am. Compl. ¶ 14.)

In August 2008, DH contacted the New Jersey Department of Children and Families, Division of Youth and Family Services ("DYFS") regarding information on her birth family. According to Defendants, DYFS policy permitted DYFS representatives to disclose identifying information about the biological family to adult adoptees when the birth parents and/or biological siblings consent to such disclosure.  (*See* Def.'s Statement ¶ 12; Pl.'s Statement ¶ 12.)  As a result of DH's inquiry, Defendant Dolores Helb, a DYFS representative, sent a letter to Plaintiff with an Adoption Registry Release form, advising Plaintiff that an adult adoptee sought information about, and possible contact with, her birth family.  (Def.'s Statement ¶¶ 2–3 & Ex. B; Pl.'s Statement ¶¶ 2–3.)  The correspondence asked Plaintiff to review the information provided and indicate whether she "w[as] interested in pursuing this matter."  (Def.'s Statement ¶ 4 & Ex. B; Pl.'s Statement ¶ 4.)  Plaintiff did not respond in any manner to the DYFS letter. (Def.'s Statement ¶ 9; Pl.'s Statement ¶ 9; Am. Compl. ¶ 20.)  On December 1, 2008, Helb also sent a similar information/contact request to Plaintiff's other daughter (DH's biological sister), whom this Court will refer to as "JB."  (Def.'s Statement ¶ 6 & Ex. D; Pl.'s Statement ¶ 6.)  JB responded to this letter, providing her cell phone number.  (Def.'s Statement ¶ 10 & Ex. E ("JB Dep.") at 12–13; Pl.'s Statement ¶ 10.)  On or about December 9, 2008, Helb received JB's

---

[1] The Court notes that Plaintiff's response brief does not contain page numbers. Therefore, the Court will cite the brief according to the sequential order of the pages.

consent form, and a DYFS representative informed[2] DH that she could contact her biological sister.  (*See* Co-Defendants Statement ¶ 30; Jordan Decl. Ex. D (Helb Dep.) at 22–23; Pl.'s Statement ¶¶ 18–21.)  Shortly thereafter, in late December or early January 2009, JB called and spoke with a DYFS representative, whereupon she was advised that her biological sister had attempted to contact her via telephone.  (Def.'s Statement ¶¶ 11–12 & JB Dep. at 13–16; Pl.'s Statement ¶¶ 11–12.)  After speaking with the DYFS representative, JB eventually made contact with DH.  (Def.'s Statement ¶ 13 & JB Dep. at 18; Pl.'s Statement ¶ 13.)  JB does not recall speaking with Ms. Helb.  (Def.'s Statement ¶16; Pl.'s Statement ¶ 16.)  In December 2008, DH appeared unannounced at the home of Plaintiff, her birth mother.  (Def.'s Statement ¶¶ 14–15; Pl.'s Statement ¶¶ 14–15; Am. Compl. ¶¶ 26–27.)  According to Plaintiff, the encounter left her "feeling violated, in shock, and short of breath."  (Am. Compl. ¶ 28.)

Subsequently, on June 18, 2009, Plaintiff filed suit against Ms. Helb and other DYFS employees, both individually and in their official capacities, under 42 U.S.C. § 1983, alleging that Defendants invaded Plaintiff's constitutional right to privacy by revealing the contact information of Plaintiff and JB to DH.  Plaintiff seeks statutory, compensatory, and punitive damages, as well as injunctive relief.  Ms. Helb now moves for summary judgment,[3] arguing: (1)

---

[2]Co-Defendants indicate that Helb alerted DH of the "news" about her biological sister, while Helb's deposition testimony appears to indicate that a DYFS colleague conveyed the news.  (*Compare* Co-Defendants Statement ¶ 30 *with* Helb Dep. at 21–24.)  In response, Plaintiff asserts, without a citation to the record, that "It is uncontested by the summary judgment record that Helb sought, obtained and circulated to [DH], Plaintiff's natural daughter's contact information, which, in turn, causally allowed [DH] to easily discover Plaintiff's identity."  (Pl.'s Resp. Br. at 3.)

[3]Co-Defendants Debra Boehme and Barbara Parnes also moved for summary judgment (Doc. No. 35), but in Plaintiff's response brief, Plaintiff withdrew all claims as against Defendants Boehme and Parnes.  (Pl.'s Resp. Br. at 2.)  Therefore, the Court will dismiss Plaintiff's claims as against Defendants Boehme and Parnes, and deny these Defendants' motion

that Plaintiff has not advanced any evidence that Helb disclosed identifying information about the Plaintiff that led DH to discover her birth mother; and (2) that Helb's conduct is shielded by sovereign immunity and qualified immunity.

## II.    ANALYSIS

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587; *Pa. Coal Ass'n v. Babbitt*, 65 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because the matter is based on a federal question.

Plaintiff's claim arises under 42 U.S.C. § 1983, which provides that:

---

for summary judgment as moot. In addition, Plaintiff has moved to strike the reply brief filed by the dismissed Defendants. (Doc. No. 51.) The Court notes, however, that despite withdrawing her claims against these Defendants, Plaintiff nevertheless responded to the arguments of these Defendants in her response brief. Accordingly, both sets of Defendants filed a reply brief to Plaintiff's response, and Defendant Helb incorporated portions of the now-dismissed Defendants' reply arguments into her reply brief. To the extent that Plaintiff seeks to strike the portions of Defendant Helb's reply that rely on the arguments presented in the now-dismissed Defendants' reply brief, the Court denies this motion.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to state a claim for relief under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 48 (1988); *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Here, Plaintiff filed her § 1983 claim against Defendant in both her individual and official capacities.

Helb argues that Plaintiff has not provided any factual support for her claim that Helb revealed any information concerning Plaintiff or her children to DH, and, thus, that Plaintiff has not established that Helb violated her privacy rights. Further, Helb contends that she is immune from suit as a state employee under principles of sovereign and qualified immunity. (Def.'s Br. at 14–16.) Plaintiff disagrees, arguing that Helb's disclosure of identifying information is supported by the undisputed records, and that Helb's conduct is not protected by sovereign and qualified immunity because Helb violated her clearly established privacy rights. Although her argument is not entirely clear, the Court understands Plaintiff's position to be that the Due Process Clause of the Fourteenth Amendment and a New Jersey statutory provision, N.J. Stat. Ann. § 9:3-52(a), clearly established her right to remain an anonymous birth mother, and that Helb's disclosure violated these rights. (Pl.'s Br. at 4–7.) The Court will begin by disentangling

Plaintiff's official capacity and individual claims, as well as Defendant's respective immunity defenses.

   A.  *Plaintiff's Official Capacity Claim*

   In her response brief, Plaintiff appears to withdraw her official capacity claim against Helb (*see* Pl.'s Resp. Br. at 2, 7), but Plaintiff's position on this issue is not entirely clear. Regardless, the Court agrees with Helb that Plaintiff's official capacity suit will not lie. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI.  Absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because "official-capacity suits generally represent only another way of pleading an action" against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks omitted).  Section 1983 does not override a state's Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332, 345 (1979).  Furthermore, neither states, governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are "persons" within the meaning of § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989) (holding that the New Jersey Department of Corrections is not a person under § 1983)).  Because the Eleventh Amendment bars suit against Defendant in her official capacity, and because Defendant is not a "person[]"

6

under § 1983 for such purposes, Plaintiff's claims against Defendant in her official capacity cannot stand.[4]

### B.  Plaintiff's Individual Claim

A plaintiff may still bring suit under § 1983 against state employees in their individual capacities.  Indeed, a state employee may be held personally liable for actions taken while performing official functions.  *Hafer*, 502 U.S. at 26 ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them.  By contrast, officers sued in their personal capacity come to court as individuals."); *Melo v. Hafer*, 912 F.2d 628, 637 (3d Cir. 1990) (rejecting "[the] suggestion that a state official can be sued in her personal capacity only if the allegedly unconstitutional actions were not taken in her official capacity," and explaining that "[t]he Supreme Court cases expressly recognize that individual capacity suits may be brought against government officials who acted under color of state law") (citing *Brandon v. Holt*, 469 U.S. 464, 472–73 (1985); *Owen v. City of Independence*, 445 U.S. 622, 637–38 (1980)).  As noted above, Helb contests Plaintiff's proof that Helb actually disclosed identifying information and argues in

---

[4]The Court notes that Plaintiff's Complaint also nominally seeks injunctive relief.  The Supreme Court has recognized that the Eleventh Amendment permits official capacity suits seeking prospective injunctive relief where the state official's conduct violated constitutional rights.  *See, e.g.*, *Ex Parte Young*, 209 U.S. 123 (1908).  Because the Court finds that Plaintiff has not established a prima facie case of a constitutional violation, *see infra*, the Court must reject Plaintiff's claim for injunctive relief.  However, even if Plaintiff could establish a violation of her constitutional rights, she has not identified what it is she seeks to enjoin.  According to the parties' representations, DH has already made contact with Plaintiff, rendering further attempts to conceal Plaintiff's identity moot.  And even if the Court construed Plaintiff's Complaint to request an injunction preventing DYFS from continuing to implement their disclosure policies, the Court notes that Plaintiff has not filed suit against DYFS or the State of New Jersey.  Thus, Plaintiff's proposed injunctive relief would do nothing more than prevent this particular Defendant from following DYFS's policy.

the alternative that her conduct is shielded by the doctrine of qualified immunity.  The Court will

address the factual issue regarding Helb's conduct before turning to the qualified immunity issue.

### 1. *Plaintiff's Proffer Regarding Helb's Conduct*

Plaintiff relies on the admissions of Helb's co-Defendants, who state that Helb relayed

the "news" to DH that she could contact her biological sister JB.  (Co-Defendants Statement

¶ 30.)  Helb's deposition testimony in this regard, upon which her co-Defendants relied, indicates

that she and/or co-Defendants gave DH her sister's contact information.  (Helb Dep. at 23:1–6

(explaining how DYFS received the consent form from JB, and explaining that "we gave the

information to [DH]").  Considering that it is undisputed that Helb signed the initial

correspondence requesting permission to disclose Plaintiff's and JB's identities, Helb's

testimony and co-Defendants' submissions persuade this Court that there is a genuine issue of

material fact regarding whether or not Helb disclosed identifying information to DH.  However,

the Court notes that Plaintiff has presented no evidence that Helb (or any DYFS representative)

directly revealed identifying information about Plaintiff, as opposed to Plaintiff's daughter JB.

(*Cf.* Pl.'s Resp. Br. at 1 (arguing that Helb's disclosure of JB's contact information "enabl[ed]

Howell's back-door discovery of Plaintiff's otherwise confidential identity").)  Accordingly, in

considering Plaintiff's constitutional claim, the Court will not entertain speculation that Helb

revealed Plaintiff's information to DH.

### 2. *Qualified Immunity*

Unlike official capacity suits, state officials sued in their individual capacities "may assert

personal immunity defenses such as objectively reasonable reliance on existing law."  *Hafer*, 502

U.S. at 25.  Qualified immunity shields state officials[5] from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Before assessing Helb's qualified immunity defense, the Court must address Helb's failure to include this affirmative defense in her Answer.[6]

> *a.  Waiver*

Generally speaking, "[a]n affirmative defense which is neither pleaded as required by Rule 8(c) nor made the subject of an appropriate motion under Rule 12(b) is waived."  *Systems, Inc. v. Bridge Elec. Co.*, 335 F.2d 465, 466 (3d Cir. 1964).  "Courts in this Circuit, however, have taken a more forgiving approach to parties who fail to raise affirmative defenses in an answer, as courts have held that the failure to raise an affirmative defense by responsive pleading or appropriate motion does not always result in waiver."  *Sultan v. Lincoln Nat'l Corp.*, Civ. No. 03-5190, 2006 WL 1806463, at *13 (D.N.J. June 30, 2006) (citing *Prinz v. Great Bay Casino Corp.*, 705 F.2d 692 (3d Cir.1983)).  Federal Rule of Civil Procedure 15 imposes instructs courts to "freely give leave [to amend the pleadings] when justice so requires," Fed. R. Civ. P. 15(a)(2), and the Third Circuit has recognized that a "defendant does not waive an affirmative defense if '[h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in

---

[5]Plaintiff does not contest that Helb was a state employee for purposes of qualified immunity during the events precipitating this lawsuit.

[6]The Court notes that Helb also failed to raise sovereign immunity as a defense in her Answer, but this omission is of no moment, because the Supreme Court recognized in *Edelman v. Jordan* that "the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court."  415 U.S. 651, 678 (1974); *see also In re Hechinger Inv. Co. of Del., Inc.*, 335 F.3d 243, 251 (3d Cir. 2003).

its ability to respond.'" *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991) (citations omitted).  The Third Circuit has extended these principles to qualified immunity defenses raised for the first time by a motion for summary judgment, instructing courts to consider "whether the defendants violated any scheduling orders in raising the defense for the first time in their summary judgment motions, whether they delayed asserting the defense for tactical purposes or any improper reason, and, most important, whether the delay prejudiced the plaintiff's case." *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 210 (3d Cir. 2001).

Here, Defendant Helb did not raise a qualified immunity defense in either her original Answer or Amended Answer, but instead raised the defense for the first time in her motion for summary judgment.  (*See* Def.'s Br. at 15–16.)  Her co-Defendants raised the affirmative defense in both their original Answer and Amended Answer, however.  (*See* Doc. Nos. 17, 33 Third Affirmative Defense.)  There is no suggestion of tactical delay, and Plaintiff does not object to Helb's reliance on the defense.  Furthermore, in light of co-Defendants' pleadings, the Court finds that the defense does not come as an unfair surprise to Plaintiff.  Plaintiff has had a full and fair opportunity to respond to the qualified immunity defense, and therefore the Court finds that consideration of the defense will not prejudice Plaintiff.

### b. *Qualified Immunity Standard*

"The inquiry into the applicability of qualified immunity is twofold: (1) whether the plaintiff demonstrated the deprivation of a constitutional right, and (2) whether that right was established at the time of the alleged deprivation."  *Dancy v. Collier*, 266 F. App'x 102, 104 (3d Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Helb contends that the disclosure of JB's contact information to DH, her biological sister, did not violate the constitutional privacy

rights of Plaintiff, the birth mother, and if it did, such right was not clearly established when the disclosure took place.  The Court agrees on both counts.

### c. Deprivation of a Constitutional Right

Plaintiff's Complaint contends that Helb's disclosure of JB's contact information to DH indirectly abridged privacy rights guaranteed by the First, Fourth, and Fourteenth Amendments. (Am. Compl. ¶ 50.)  Properly characterized as a "liberty interest" claim under the Due Process Clause of the Fourteenth Amendment, Plaintiff argues that birth parents who give their children up for adoption have a privacy interest in the confidentiality of adoption records.  Plaintiff grounds her claim in the Supreme Court's reproductive privacy cases, such as *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), as well as cases recognizing a right to privacy for medical records, such as *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001).  (Pl.'s Br. at 5–6.)  But these cases did not deal with privacy interests in the context of adoption, and Plaintiff presents no authority supporting the contention that the Constitution guarantees the confidentiality of adoption records.  Accordingly, this Court must examine the prevailing authority on the substantive protections afforded by the Due Process Clause of the Fourteenth Amendment.

The Supreme Court has recognized that the Due Process Clause of the Fourteenth Amendment provides substantive protections in "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education."  *Paul v. Davis*, 424 U.S. 693, 713 (1976); *see also Paul P. v. Verniero*, 170 F.3d 396, 405 (3d Cir. 1999).  Towards this end, the Supreme Court has found unconstitutional laws prohibiting sexual relations between consenting adults, *Lawrence v. Texas*, 539 U.S. 558, 578–79 (2003); laws that place an undue

burden on a woman's decision whether or not to have an abortion, *Casey*, 505 U.S. at 876–78;

laws prohibiting distribution of contraception, *e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438, 453

(1972); and laws prohibiting parents from sending their children to parochial school and banning

the teaching of foreign languages to schoolchildren, *Pierce v. Society of the Sisters*, 268 U.S.

510, 534–35 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399–403 (1923).

In *Whalen v. Roe*, the Supreme Court recognized another type of privacy interest—

"avoiding disclosure of personal matters."  429 U.S. 589, 599 (1977) (upholding state law

requiring the state's collection of data regarding patients prescribed certain types of drugs).

Unlike the privacy decisions that protected personal autonomy "in making certain kinds of

important decisions," and thereby conferred affirmative rights, this privacy interest acted as a

shield against state actors revealing certain types of sensitive information.  *See Whalen*, 429 U.S.

at 599–600 & n.24; *but see Paul*, 424 U.S. at 713 (rejecting procedural and substantive due

process claims premised on reputational injury inflicted by state officers' distribution of materials

to merchants that described plaintiff as an "Active Shoplifter").  The *Whalen* Court did not

elaborate on the extent of this right to informational privacy, but the Third Circuit has found that

the protection extends to personal medical records, *United States v. Westinghouse Elec. Corp.*,

638 F.2d 570, 577 (3d Cir.1980), and, to a lesser extent, to prisoners' medical records, *Doe v.

Delie*, 257 F.3d 309, 315–317 (3d Cir. 2001) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987),

and suggesting that prisoners' privacy interest would be infringed by the disclosure of medical

information if the disclosure was not "reasonably related to legitimate penological interests").  At

the same time, the Third Circuit has rejected claims that Due Process protects the confidentiality

of expunged criminal records, *Nunez v. Pachman*, 578 F.3d 228, 232–33 (3d Cir. 2009), and the

Circuit has rejected a Due Process challenge to a sex offender registry law, despite "[a]ccepting" the contention that sex offenders had "some nontrivial interest in [the confidentiality of their] home address," because the state had a compelling interest in informing the public of the whereabouts of sex offenders, *Paul P.*, 170 F.3d at 404.

The Third Circuit has recognized that courts have been "reluctant to expand" federal constitutional protection for confidential information, explaining that Due Process "shields from public scrutiny only that information which involves 'deeply rooted notions of fundamental personal interests derived from the Constitution.'" *Nunez*, 578 F.3d at 232 (citing *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir.1986) (citing Regents of the *Univ. of Mich. v. Ewing*, 474 U.S. 214, 228–30 (1985) (Powell, J., concurring))).  The right to informational privacy "protects against public disclosure only 'highly personal matters' representing 'the most intimate aspects of human affairs.'" *Nunez*, 578 F.3d at 231–32 (quoting *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996); *Wade v. Goodwin*, 843 F.2d 1150, 1153 (8th Cir. 1988)).  In considering new privacy claims premised on the right to confidential information discussed in *Whalen*, the Third Circuit has instructed courts to "look[] at whether [the information] is within an individual's reasonable expectations of confidentiality.  The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *Paul P.*, 170 F.3d at 401 (citing *Fraternal Order of Police v. City of Phila.*, 812 F.2d 105, 112-13 (3d Cir. 1987)).

Accepting for purposes of this motion that Helb disclosed JB's contact information to DH in accordance with DYFS policy, and that this disclosure enabled DH to locate Plaintiff, the Court finds that Plaintiff has not shown a constitutional violation.  First, the privacy interest asserted by Plaintiff—confidentiality of birth parent status for parents who give up their children

13

for adoption—is not sufficiently analogous to the affirmative intimacy, reproductive, and familial

autonomy rights recognized in cases like *Lawrence*, *Casey*, *Eisenstadt*, *Pierce*, and *Meyer*.

Assuming *arguendo* that the "zones of privacy" recognized in these cases encompass a general

right to give up one's child for adoption, DYFS's policy and Helb's alleged conduct did not

infringe upon that right.  The alleged conduct—disclosure of a biological sibling's contact

information to an adult adoptee—occurred many years after the adoption decision and did not

directly reveal any identifying information about Plaintiff.  Thus, the challenged policy and

Helb's conduct in no way restricted Plaintiff's discretion in making the decision to give up her

child for adoption.  Second, the Court is not persuaded that the information disclosed was the

sort of highly intimate, private information entitled to confidentiality under *Whalen* and its

progeny.  Plaintiff makes no attempt to show that the confidentiality of sibling contact

information "involves 'deeply rooted notions of fundamental personal interests derived from the

Constitution.'"  *See Nunez*, 578 F.3d at 232.  Furthermore, Plaintiff did not have a reasonable

expectation of privacy in JB's contact information; JB was an adult at the time DYFS requested

her contact information, and JB consented to the disclosure of her information.  Although JB's

status as a biological sibling was sensitive personal information, it was personal to *her*, not

Plaintiff.

　　　　Plaintiff appears to argue that courts' recognition of "lesser" privacy rights—such as the

confidentiality of prisoner's medical records in *Delie*—warrant a finding of a constitutional

violation in this case.[7]  Although Plaintiff is correct that criminals generally enjoy lesser

---

[7]Plaintiff also cites *Bloch v. Ribar* in passing, a Sixth Circuit case that recognized a rape victim's "fundamental right of privacy" under *Whalen* "in preventing government officials from gratuitously and unnecessarily releasing the intimate details of [a] rape where no penalogical

14

constitutional protections than free citizens, *see Delie*, 257 F.3d at 315–17, the privacy interest recognized in *Delie* bears no relation to the privacy interest in this case.  On the one hand, Plaintiff claims a new privacy interest that is far broader than the established privacy interest contemplated in *Delie*.  Here, Plaintiff effectively claims a constitutional interest in suppressing another person's discretion regarding whether or not to reveal her privileged information to a biological sibling.  By comparison, the *Delie* court concluded that prisoners had the same privacy interest in the confidentiality of medical records that had been recognized by the Third Circuit more than twenty years earlier in *Westinghouse*, just a less robust version of that right that balanced the prisoners' privacy interests against the legitimate penological interests of the state. *See Delie*, 257 F.3d at 315–317.  In any event, *Delie* cuts against Plaintiff's argument because, notwithstanding the then-long-established rule of *Westinghouse*, the *Delie* court found that the privacy interest was not clearly established in the prison context, and thus held that the prison officials who disclosed the plaintiff/inmate's HIV status were entitled to qualified immunity.  *Id.* at 322.  Here, Plaintiff does not present a modest variation on an existing privacy interest, but an expansive privacy interest only tangentially related to the Fourteenth Amendment's established liberty interests.

Plaintiff also contends that N.J. Stat. Ann. § 9:3-52(a), a statute that mandates adoption

---

purpose is being served."  156 F.3d 673, 686 (6th Cir. 1998).  Although Plaintiff claims to be a rape victim, she does not contend that Helb or any other state official revealed intimate details about her rape to anybody.  Nor does Plaintiff suggest that Helb revealed *any* personal information about Plaintiff.  Thus, *Bloch* is inapposite to the inquiry before this Court.

records be kept under seal,[8] supports her constitutional claim, arguing that "[c]ourts overwhelmingly looking towards state statutory protections as evidence of substantive due process rights."  (Pl.'s Br. at 5.)  Plaintiff is mistaken.  While the historical development of state laws may be relevant to the consideration of whether particular rights are so "deeply rooted" as to inhere in the federal Constitution's guarantee of due process, *see, e.g.*, *Washington v. Glucksberg*, 521 U.S. 702, 710 (1997) (commencing the substantive due process inquiry "by examining our Nation's history, legal traditions, and practices"), numerous decisions in this Circuit and elsewhere have recognized that specific rights granted by a particular state law do not affect the substantive protections afforded by the federal Constitution, *e.g.*, *Nunez*, 578 F.3d at 233; *Eagle*, 88 F.3d at 626; *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995).[9]  To hold

---

[8]This provision provides in pertinent part:

> All records of proceedings relating to adoption, including the complaint, judgment and all petitions, affidavits, testimony, reports, briefs, orders and other relevant documents, shall be filed under seal by the clerk of the court and shall at no time be open to inspection or copying unless the court, upon good cause shown, shall otherwise order.

N.J. Stat. Ann. § 9:3-52(a).

[9]In this sense, a substantive due process claim differs from a procedural due process claim, which may be predicated upon a liberty or property interest granted by state law.  Yet because the federal Constitution is not the source of the liberty or property interest, the focus for a procedural due process claim is much narrower than a substantive due process claim, in that it addresses only the *process* utilized prior to the deprivation of the interest, not the substance of the state's decision to deprive the citizen of the interest.  *See, e.g.*, *Paul*, 424 U.S. at 711–13; *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Plaintiff's response brief invokes procedural due process in passing, arguing that Helb's alleged conduct "abrogate[d] plaintiff's clear statutory and thus procedural due process right to so challenge th[e] [disclosure of JB's contact information]."  (Pl.'s Br. at 6–7.)  However, Plaintiff's procedural due process argument fares no better than her substantive due process argument, because Plaintiff has not shown that state law endowed her with a liberty or property interest in the confidentiality of her adult daughter's (JB's) contact information, and Plaintiff has not shown that Helb violated state law.  Generally speaking, the procedural due process inquiry

otherwise would render federal constitutional rights subsidiary to the protections of state law, a

concept that is anathema to our federal constitutional system.

Lastly, Plaintiff argues that Helb's violation of this statute entitles Plaintiff to relief.  This

argument, too, is of no moment, because the only claim in Plaintiff's Complaint arises under 42

U.S.C. § 1983, which generally does not provide a private right of action for claims premised on

state law.  *See, e.g.*, *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  If Plaintiff intended to

present a state law claim premised on N.J. Stat. Ann. § 9:3-52(a), and presuming that New Jersey

law permits a private right of action to enforce privacy interests implicit in this statute, the

appropriate course of action would be to seek leave to amend the Amended Complaint.  Plaintiff

has not done so.  However, even if Plaintiff did seek leave to amend, it appears that such

amendment would be futile, because Plaintiff has not shown, let alone alleged, that Helb

disclosed information from sealed adoption records.

---

entails "consideration of three distinct factors: First, the private interest that will be affected by
the official action; second, the risk of an erroneous deprivation of such interest through the
procedures used, and the probable value, if any, of additional or substitute procedural safeguards;
and finally, the Government's interest, including the function involved and the fiscal and
administrative burdens that the additional or substitute procedural requirement would entail."
*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  While N.J. Stat. Ann. § 9:3-52(a)'s mandate
that adoption records be kept under seal may be construed to vest birth families with a general
privacy interest in adoption records, this interest extends no further than the adoption records
kept under seal, and Plaintiff does not contend that Helb disclosed any information from sealed
adoption records.  Furthermore, the statutory language does not support Plaintiff's claim that her
privacy interest in the adoption records supersedes her adult daughter's ability to consent to the
disclosure of her personal contact information to her biological sister.

Even if Plaintiff had established that DYFS deprived her of a cognizable property or
liberty interest, Plaintiff does not address any of the *Mathews* factors, and Plaintiff does not
suggest that DYFS should implement additional or substitute procedural safeguards (i.e., notices,
hearings) that would minimize the risk of an erroneous deprivation of her liberty interest.
Plaintiff only challenges the substance of disclosure policy.  Consequently, Plaintiff has not
presented a proper procedural due process claim.

This Court's conclusion that Plaintiff has not established a constitutional violation is consistent with the two decisions this Court has found involving claims of a federal Constitutional privacy interest in adoption records.  In *Doe v. Sundquist*, the Sixth Circuit denied adoptive parents and birth mothers' request for injunctive relief from a Tennessee statute that would allow the disclosure or previously confidential adoption records to adult adoptees.  106 F.3d 702 (6th Cir. 1997).  In *Does 1–7 v. State*, an Oregon appeals court rejected birth mothers' challenge to a similar Oregon statute.  993 P.2d 822, 835–36 (Or. Ct. App. 1999).  Under the Tennessee statute in *Sundquist*, biological parents, siblings, lineal ancestors, and lineal descendants of an adoptee retained the discretion to exercise a "contact veto" prior to the disclosure of their identity to the adoptee, but the adoptee's relatives "c[ould] veto only contact, not disclosure of their identities."  106 F.3d at 705.  The plaintiffs in that case claimed that the new statute violated their federal Constitutional right to privacy.[10]  The *Sundquist* court disagreed, rejecting plaintiffs' arguments that the disclosure of adoption records violated the familial and reproductive privacy rights acknowledged by the Supreme Court in *Meyer* and *Casey*.  *Id.* at 705–706 (explaining that "[n]othing in the Tennessee statute infringes on th[e] right. . . . to marry and to raise children, [and] also to adopt children and to give up children for adoption," and finding that the new statute placed no undue burden on the purported right to give up one's child for adoption).  Relying on *Sundquist*, the Oregon court in *Does 1–7* rejected the birth mothers' substantive due process claim, adding the following insight:

> Although adoption is an option that generally is available to women faced
> with the dilemma of an unwanted pregnancy, we conclude that it is not

---

[10]The *Sundquist* plaintiffs also presented a claim based upon the Tennessee constitution, but the court declined to decide that issue.  106 F.3d at 708.

> a fundamental right. Because a birth mother has no fundamental right to have her child adopted, she also can have no correlative fundamental right to have her child adopted under circumstances that guarantee that her identity will not be revealed to the child.

*Does 1–7*, 993 P.2d at 836.

The *Sundquist* court also rejected the plaintiffs' claim of a right to informational privacy under *Whalen*, noting its "skepticism that information concerning a birth might be protected from disclosure by the Constitution," *Sundquist*, 106 F.3d at 705. Although Sixth Circuit precedent at the time of *Sundquist* did not recognize a "'general right to nondisclosure of private information,'" *see id.* at 706 (quoting *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir.1981))—a position ostensibly at odds with the Third Circuit precedent binding on this Court—the *Sundquist* court's discussion of the public nature of birth records and the countervailing interests of parents and adopted children, this Court believes, is germane to the Court's consideration of the privacy interest advanced by Plaintiff. As the *Sundquist* court recognized, "[a] birth is simultaneously an intimate occasion and a public event—the government has long kept records of when, where, and by whom babies are born. Such records have myriad purposes, such as furthering the interest of children in knowing the circumstances of their birth." *Sundquist*, 106 F.3d at 705; *see accord Does 1–7*, 993 P.2d at 836 ("Neither a birth nor an adoption may be carried out in the absolute cloak of secrecy that may surround a contraception or the early termination of a pregnancy. A birth is an event that requires the generation of an accurate vital record that preserves certain data, including the name of the birth mother."). Both the *Sundquist* and *Does 1–7* courts acknowledged that the state had resolved the conflicting interests in favor of disclosure, and held that the Constitution did not forbid the state from making this value judgment. *Sundquist*, 106 F.3d at 705; *Does 1–7*, 993 P.2d at 836.

19

The DYFS policy before this Court is less invasive than the Tennessee statute at issue in *Sundquist*, which permitted the disclosure of the relative's identity, regardless of the "contact veto." There is no evidence that Helb or any DYFS representative revealed any personal information about Plaintiff. This Court agrees with the *Sundquist* and *Does 1–7* courts that the Constitution permits New Jersey to adopt policies favoring the disclosure of adoption records.[11] To enshrine the broad privacy right asserted by Plaintiff as an inviolable constitutional protection would enable a single biological parent to trump the liberty interests of the willing adoptee and all consenting relatives in sharing a familial bond.

### d. Clearly Established Right

Having determined that Plaintiff has failed to demonstrate a constitutional violation, this Court must grant summary judgment in Helb's favor. However, the relative dearth of authority on this issue, and the tenuous relation between the privacy interest asserted by Plaintiff and existing substantive due process rights, underscores the fact that, even if this Court found Helb's alleged conduct to infringe Plaintiff's constitutional rights, the right asserted by Plaintiff is not clearly established, and Helb would be entitled to qualified immunity. The clearly established prong of the qualified immunity test concerns "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201–02; *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Delie*, 257 F.3d at 318. Plaintiff has

---

[11]This ruling is also consistent with the decisions of courts that have held that the Constitution does not prohibit the state from requiring that adoption records be sealed. *See, e.g.*, *Alma Soc'y Inc. v. Mellon*, 601 F.2d 1225, 1233 (2d Cir. 1979); *Schechter v. Boren*, 535 F. Supp. 1, 3–4 (W.D. Okla. 1980).

provided no authority supporting her constitutional privacy claim, and this Court has only located two decisions directly on point—*Sundquist* and *Does 1–7*, both of which rejected similar claims. Under these circumstances, the Court cannot say that a reasonable officer in Helb's position would know that the disclosure of a consenting biological sibling's contact information to an adult adoptee was unlawful. Thus, the Court cannot conclude that Helb violated Plaintiff's clearly established rights.

## III.    CONCLUSION

For the aforementioned reasons, the Court will grant Helb's motion for summary judgment (Doc. No. 36) against Plaintiff. Because Plaintiff withdraws all remaining claims against Helb's co-Defendants, nothing remains of this case. An appropriate form of order accompanies this Memorandum Opinion.


Dated: January 31, 2011


                                         _____/s/ Garrett E. Brown, Jr._____
                                         GARRETT E. BROWN, JR., U.S.D.J.